Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court Fifth District State of Illinois is now in session. The Honorable Justice Moore presiding, along with Justice Wharton and Justice Vaughn. The first case on the docket this morning is number 519-0519, People v. Shields. Arguing for the appellant Alan Shields is Craig Hanson. Arguing for the appellate People of the State of Illinois is Max Miller. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Morning, counsel. Are you ready to proceed? We'll hear from counsel for the appellant. Good morning. May it please the court opposing counsel. I'm Craig Hanson from the Office of the State Appellate Defender and I represent the appellant Mr. Alan Shields. Mr. Shields was convicted of two counts of aggravated battery and one count of threatening a public official. Following a jury trial, he was sentenced to 14 years in DOC and two years of mandatory supervised release. The first issue before this court is whether Mr. Shields' trial counsel rendered effective assistance. In ruling on defense counsel's motions in limine, the trial court held certain testimony to be inadmissible or amounting to negligence. Despite seeking and receiving these favorable rulings, Mr. Shields' defense counsel inexplicably proceeded to actively solicit this prohibited testimony and repeatedly failed to object to prohibited hearsay statements. As a result, the jury was exposed to the very prejudicial hearsay, excuse me, the very prejudicial testimony defense counsel have persuaded the court to exclude. And Mr. Shields was denied his constitutional right to the effective assistance of counsel. In people befilia, the appellate court held that defense counsel is obligated to use the rules of evidence to shield his client from proceedings based on unreliable evidence. Here, despite embarking on a trial strategy designed to fulfill this obligation, defense counsel's repeated solicitation of prohibited testimony, failure to object to the prohibited testimony, and failure to seek the court's instructions from the court, subjected Mr. Shields to damaging testimony that the trial court in ruling on defense counsel's pre-trial motions found more prejudicial than probative. Defense counsel acted unreasonably and rendered ineffective assistance where he abandoned his client's interest and subjected Mr. Shields to unreliable testimony. Prior to his trial, Mr. Shields filed three motions in limine. In those motions, Officer Doug Schrock and Correctional Officer Rick Bagrabi were prohibited from testifying as to any statements they made, any statements the defendant made, or anything anybody else said. As to the second motion, defense counsel sought to exclude hearsay statements made by the police dispatcher and other non-testifying witnesses. While the trial court never made a specific ruling on this motion, it did observe if the dispatcher isn't going to testify, then any statements that the person made to the dispatcher wouldn't be coming in anyway, would they? Here, the court appeared to agree with defense counsel that the statements of non-testifying witnesses would not be admissible anyway. In defense counsel's third motion in limine, defense counsel thought to preclude the state from introducing any testimony or evidence regarding dismissed charges. In ruling on this final motion, the trial court limited witnesses to testifying that they were responding to an unspecified incident or disturbance. The court further noted, that way you won't be influencing the jury, saying, well, if he did this, maybe he's guilty of that. Here, the trial court appeared to concur with counsel's concern that any testimony by the responding police officers regarding the defendant's uncharged conduct amounted to prohibited propensity testimony. The conclusion to be drawn from counsel's efforts to exclude certain testimony is clear. Counsel rightfully sought to exercise his duty to leverage the rules of evidence and prevent the introduction of irrelevant and previously undisclosed testimony that was more prejudicial than probative. And the trial court, in issuing rulings favorable to the defendant, seems to have agreed. However, after successfully persuading the court bar the introduction of specific prejudicial testimony, defense counsel utterly failed to follow through, resulting in undue prejudice to Mr. Shields. During the course of the trial, defense counsel either failed to object to, seek curative instructions from the court, or actively sought prohibited testimony on five different occasions. Officer Schrock testified, Marion Dispatch had advised that there was an active fight in the runway, roadway, suggesting that Mr. Shields had been involved in a physical altercation prior to the events leading to his arrest. Defense counsel failed to object or seek any curative instructions from the court concerning this violation of the court's directive. Defense counsel then actively solicited prohibited testimony from Schrock when counsel asked whether the defendant threatened physical violence against you. And Schrock responded that the defendant was screaming obscenities the entire time, threatening both myself and Officer Warren. Correctional Officer Bograbi testified that Mr. Shields said he wasn't going to cooperate and said he was going to hurt somebody, thus providing a hearsay statement made by the defendant in violation of the court's solicited prohibited testimony when counsel asked Bograbi whether the defendant made any threats of bodily harm. Bograbi responded, not specifically toward me. On the way in, he threatened to hurt somebody. Bograbi went on to testify that after he secured Mr. Shields in the holding cell, one of the ambulance staff pointed out that the defendant just bit you. In doing so, this witness made a hearsay statement offering proof of the matter asserted, which was also specifically barred by the trial court's prohibition on Bograbi testifying as to anything anyone else said. Since Bograbi himself did not observe the defendant inflict an injury, this prohibited statement is the only statement indicating that Mr. Shields was responsible for injuring Bograbi. In People v. Bryant, this court held that the question under the prejudice performance, the defendant was more likely to not receive a different verdict, but rather whether in light of the deficiency, defendant received a fair trial. Here, counsel's failures were unreasonable and clearly prejudiced Mr. Shields' case in that the prohibited testimony introduced to the jury fulfilled the very concern the trial court expressed when it ruled that such The second issue before this court is the matter of the trial court's consideration of an improper factor in aggravation during sentencing. Here, the trial court erred by creating a so-called double enhancement in sentencing Mr. Shields, but it improperly considered whether his conduct caused or threatened serious harm as an aggravating factor when such harm or the threat thereof are inherent elements in the crime of aggravated battery and threatening a public official. Accordingly, the causation or threat of harm has already been considered by the legislature when it established the applicable penalty range for these offenses. Is the court allowed to consider, for example, in this case, the bite required extensive testing for several months afterwards? Are they allowed to consider degrees of harm or post-incident harm such as that? Post-incident harm. The court may consider the breaking of the scan as the harm to aggravated battery, but then when you have to be tested for three months afterwards, is the court allowed to consider that? The court may consider, yes, the court may consider that, your honor. As an enhancement then? As an enhancement? Not necessarily an enhancement, as an aggravating factor, let's say. Well, the factor considered by the legislature here is the degree of harm and certainly bodily harm is harm. And that was a factor that was considered by the legislature in enacting the penalty range for this. And that's what we're arguing. All right. Thank you. After considering the improper aggravating factor, the trial court Mr. Shields to the maximum term of imprisonment on each count. The remedy here is found in People v. Doubting, which held that when the trial court considers an improper factor in aggravation, the case must be remanded unless it appears from the record that the weight placed on the improper factor was so insignificant that it did not lead to a greater sentence. Here, the record is clear that the trial court considered the improper factor and imposed the maximum allowable sentence. The record does not support the conclusion that the trial court's consideration of the improper factor did not lead to a greater sentence. Where such conclusion cannot be drawn from the record, this court should remand for a new sentencing hearing. Accordingly, Mr. Shields respectfully requests this court reverse his conviction and remand for a new trial with new counsel. Alternatively, he requests this court vacate his sentence and remand this case for a new sentence. Mr. Shields, you have not responded to the state's argument that here there was overwhelming evidence of guilt, and even if there was error there's no prejudice. Well, the prejudice was certainly acknowledged by the court in terms of overwhelming evidence. I it should never have come in, which sort of chips away at the argument that there was in fact overwhelming evidence. So that would be our contention here. Thank you, counsel. Any other questions from Justices Wharton and Vaughn? Counsel, I'm listening to your argument, and you make a strong argument that defense counsel elicited certain testimony that was barred by the court's earlier motion to eliminate rulings. I'm wondering about the situation where he inquired, and I believe it was of Officer Schrock, I think. Correct me if I'm wrong. When he asked the question, did he physically threaten you? I'm wondering if this was not a careless solicitation of a violation of the motion to eliminate, but maybe an inartful question if whether what he was asking was, you have a wheel-bound defendant, did he do anything physical to threaten you, not verbally? And he got an unresponsive answer. If I understand your question correctly, Your Honor, you're asking if what counsel was attempting to solicit was Schrock's observation of the defendant's physical activities rather than a statement made by the defendant concerning a verbal threat of physical violence. The way the question was worded, I believe that it is possible that that may have been counsel's intent. However, the response that he received indicated that Schrock provided indicated more of a verbal threat statements made by the defendant. I agree, it was unresponsive. Now, counsel's cross-examination of Officer Schrock and he got Officer Schrock to say, I don't recall the extent of the threats, I just still have sentences, is the quote. That's correct. And then Officer Birgby followed up on cross-examination, he threatened to hurt somebody, he didn't really say who. So, counsel was able to get one officer to say that he didn't recall what the threat was, and the other officer said, I can't recall who they were directed against. I think that's highly effective. It seems to be a departure from the strategy counsel embarked upon when counsel sought to exclude such statements. And then through, whether it was inartful, or as we're contending, inappropriate questioning of the witnesses, the defense counsel solicited the very testimony that he had earlier sought to preclude. Counsel went to great effort to ensure that those statements, the ones that you just mentioned, Your Honor, would not come in. And then defense counsel brought them in, which seems to be a departure from counsel's initial strategy of precluding those. And counsel has a duty to preclude such statements, and counsel here failed to uphold that duty. Okay, and this is something you may have to enlighten me on. Okay, you can say that the statement of the technician, he bit you, was pretty unresponsive to the actual question. I don't know if the technician was actually on the state's witness list. No, he was not. Thank you very much. Yes, Your Honor. Okay, counsel, you'll have an opportunity for a rebuttal, and we'll now hear from the state. Thank you, Your Honor. May it please the court, counsel, my name is Max Miller, and I represent people of the state of Illinois. Unless otherwise directed by this court, the state will spend its portion of the argument talking about the separate and effective assistance of counsel claims and its brief to assert that the sentence was proper. So the defendant argues that trial counsel failed to object to certain testimony evidence and that counsel negatively solicited prejudicial information. As this court's well aware, to show an effective assistance of counsel, the defendant needs to allege facts demonstrating that counsel's representation fell below an objective standard of reasonableness and that there's a reasonable probability but for counsel's result of trial would have been different. The testimonial evidence challenge is broadly distinguished by the defendant into the reason for the police response and then a series of statements made by the defendant, several witnesses. Regarding the testimony concerning the reason for the police response, the first instance cited by the defendant as violating this ruling was Martha Jennings, who was asked by the state about a disturbance prompting her call to the police. At the outset, it should be emphasized that the trial court's ruling did not really address the testimony of Jennings directly, but it's clear from the transcript that what was going on here was not some attempt to, you know, circumnavigate the ruling, but rather the state utilizing language required by the trial court's ruling. When Jennings testified that she and her daughter walked past an unspecified they who were fighting, it's very likely defense counsel saw absolutely no reason to draw further attention to this unwilling progression. Generally, trial strategy encompasses decisions such as what matters to object to and when to object. The defendant can't state with any certainty that, you know, this wasn't part of trial counsel's strategy not to overemphasize Jennings' statement. The defendant argues about the testimony of Officer Schrock that it was improper in that it added potential inferences from Jennings' testimony. The state questioned Schrock regarding, you know, what he said to the defendant who was in the middle of the intersection when Schrock arrived. Here, Schrock testified about his direct observations of the defendant when he arrived. Nothing in the trial court's ruling prohibited Schrock from testifying that, you know, when he arrived he saw an individual who was sweating, who was dirty, whose mouth was bleeding. Schrock testified he was asking the defendant what happened, that he was attempting to help him, and the defendant talked about not wanting to pursue charges himself. These legitimate observations regarding the disturbance to which Schrock was dispatched implied a fight had occurred even without using the word fight to describe it. Schrock's testimony that he was not sure if the defendant was the main aggressor is merely a recognition of the reality that the defendant was not assumed to be at fault by the police for anything that occurred, but clearly that the defendant had an incident that required police attention, and that was the reason for their dispatching. Again, with all of Schrock's observations and testimony, it's likely defense counsel felt it was best not to object to his slight references that he would dispatch regarding a fight. It was an unavoidable factual circumstance that the defendant had been in some altercation when you look at the observations that Schrock testified to, and Schrock's testimony at least provided a neutral ground, being that it was unclear who was responsible for that altercation. Had defense counsel objected, it might have highlighted testimony to the jury and led to negative inferences. Additionally, the objection likely would have been denied as the observations regarding the fight would have come to light anyway. Defense counsel made a tactical decision not to object as a matter of trial strategy. Now, the defendant further challenges statements made by defendant witnesses arguing that defense counsel actively solicited prohibited testimony when counsel specifically inquired about statements made by the defendant. The first portion of that testimony at issue regards the officers attempting to restrain the defendant, including the employment of the taser. The defendant maintains that there is no strategic reason to engage in this line of questioning, but it's likely that defense counsel wanted to highlight the violence of this detainment and attempt to demonstrate to the jury that the police officers were excessive in their detainment. Defense counsel asked Schrock to explain the circumstances that led to it, and all that Schrock can really attest to is that he's not the one who used it and he couldn't speak to it. Further, defense counsel highlights that defendant was unarmed, had been forced to the ground. Defense counsel was attempting to show the jury that the defendant was not actively resisting the police officers, or at least not proportional to the force employed against him. And when Schrock claimed he was being threatened, defense counsel listed he could not even recall the threats. The potential benefit of this testimony for a jury, you know, demonstrates that trial counsel's cross-examination, which was well within the realm of trial strategy, was an ultimately unsuccessful but valid attempt to tell the defendant's story from a more sympathetic point of view. Mr. Miller, if the defense counsel here got these motions in limine, there were, by my count, there were six violations, five of them, violations of the motion in limine, five of them, by defense counsel. If defense counsel had a change in strategy, shouldn't they have requested from the judge, judge, we would like to vacate the motion in limine or withdraw the motion in limine, rather than just on his own violating the court's order? I mean, doesn't that indicate it was a strategy, maybe it was ineffective assistance, or do we even jump to that point? I'm not sure that I would say that, your honor, because, you know, I do, the state would maintain that this was the strategy from the beginning, or certainly at least as an overall strategy, talking about the resistance or lack thereof to the police was part of it, but that being said, you know, the, obviously the narrative of the case and the arguments that may evolve as the case proceeds, and I think that once certain statements were made, not that they were solicited by the state or defense counsel per se, but that the stateless testimonial evidence was out there that defense counsel was forced to, you know, adapt as he could to fit things into the overarching narrative, but I don't think that anything he did was, you know, explicitly to defy, you know, these motions in limine, that I think that he was, you know, certainly still in a sense relying on. I understand the desire that defense counsel should be free to alter their strategy and change as the trial develops and the witness's testimony develops and all that, but it seems to me the better practice would have been to approach the bench and say, judge, based on that testimony, we have a different strategy. We ask you to vacate the motion in limine, or we withdraw the motion in limine, and when they just go off and violate the motions five times, it makes me question, was that really a change in strategy? I'm not saying it wasn't trial strategy, but it certainly throws some doubt into my mind. Fair enough, your honor, and I don't have any case law that would speak to the fact whether or not that was procedurally incorrect, you know, for defense counsel to, if there's something that would say that that's per se ineffective assistance or anything like that, but I would certainly say that that does not, in the state's position, amount to objectively unreasonable assistance in the manner that it occurred in this particular case. All right, thank you. The defendant, again, argues that trial strategy, you know, that the defense counsel solicited prohibited testimony as second exchange, basically concerning defendant's conduct in the ER. The challenged exchange between TROC and the defense counsel basically further evidences trial counsel's strategy of showing the defendant's compliance with law enforcement. Again, contrary to defendant's argument of ineffective assistance, this is a direct and effective means of controlling the narrative. Defense counsel points out that defendant is with the police, he's cooperating, he had to go to the hospital after deployment of a taser, TROC can't recall any of the alleged threats made against him, and defense counsel's cross-examination consistently sought to develop facts showing that defendant's belligerence was principally verbal and did not require the level of physical restraint employed by the law enforcement. The defendant next challenges defense counsel's decision not to object to Officer Bergrave or Bergrave's testimony. The defendant points towards Bergrave testifying that defendant's attitude was uncooperative and he said he wasn't going to cooperate, he was going to hurt somebody. Now, the trial court had ruled it did not believe that Bergrave should be allowed to testify as any statements made or any statements the defendant made. The trial court actually stated they can testify as to what happened, why they were there, but not to any narrative statements. Bergrave was actually interrupted during his digression by the state who proceeded to move Bergrave along in his retelling of the evidence. As argued above, there's obvious reasons why defense counsel would decide not to object. The state was not emphasizing the point on its own, although the witness had, you know, kind of gone off script there and violated the motion, but defense counsel likely saw no need with the facts that were about to be introduced to linger on these alleged threats being made. Defense counsel acted to handle such information being introduced on cross-examination and the only meter by which we can really judge this tactic as ineffective is the ultimate conviction. The defendant argues that certain statements were improperly solicited during cross-examination, for example, that the defendant threatened to hurt someone. Defense counsel's actions here can be explained in the same way as in Shrock's testimony. The fact that the defendant hit Bergrave was central to the state's case and was always going to come before the jury. Defense counsel on cross-examination elected to attempt to demonstrate the uncertainty Bergrave possessed regarding what actually happened and the lack of corroborating witnesses. Now this line of questioning does not strengthen his testimony, but weakens his credibility. May I briefly conclude, your honors? Yes. I would just, for this and the foregoing reason mentioned in the brief, we respectfully request that this court affirm the judgment of the trial court. Justice Vaughn and Justice Wharton, any other questions? No questions. No questions, thank you. Thank you, counsel. Mr. Hanson. Thank you, your honor. I'd just like to draw attention to two things from the state's argument. The state's contention that defense counsel attempted to show that the responding officers used excessive force through the solicitation of prohibited statements from Shrock doesn't seem to square with defense counsel's strategy, or at least the one counsel embarked on. That had counsel adhered to the court's rulings on those motions in limine and sought enforcement of those rulings, those statements would not even be the subject of today's argument. So had those statements not come in, had counsel sought curative instructions from the court, we wouldn't be here today arguing about them. So the fact that they did come in is of, I believe, critical importance here. Mr. Hanson, what about the flip side of what I asked Mr. Mellor, that shouldn't the defense counsel be free to be reactive when he sees how the testimony is going? And as Justice Wharton pointed out, he conducted a fairly effective cross-examination of Brugabi when he mentioned that, you know, there were no physical threats. He was quite a bit, but you got a guy in a wheelchair and on a gurney, there were no physical threats. And shouldn't defense counsel be free to modify their strategy when they see how the examination or the cross-examination is going? Certainly counsel has the option and they are not beholden to adhere to a strategy. And certainly counsel has the opportunity and should have the the strategy that counsel embarked on that, but for the failure to seek those rulings from the court and enforce those rulings, the statements that are the subject of today's arguments wouldn't have even come in. And yes, counsel does have the opportunity to change strategies and what have you, but it just doesn't seem reasonable that where counsel embarks on this strategy and then seemingly abandons it and goes off in a different direction and then actively solicits very damaging testimony. It just does not make sense. Thank you. Thank you, your honor. That's all I have. Any questions from justices Wharton and Vaughn? No questions. No other questions for me. Thank you. Thank you counsel. We'll take this case under advisement and issue a decision in due course.